Lisa ZALTZ, Plaintiff,

v.

JDATE, Defendant.

No. 12–CV–3475 (JFB)(ARL).

United States District Court,
E.D. New York.

July 8, 2013.

Lisa Zaltz, plaintiff, pro se.

David B. Gordon, Richardson & Patel LLP, New York, N.Y., for Defendant.

## MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Lisa Zaltz ("plaintiff" or "Zaltz") brought this action for breach of contract, personal injury, and fraud against JDATE ("defendant" or "Sparks Networks").[1] Specifically, plaintiff alleges, among other things, that defendant billed her repeatedly for months without her knowledge or consent. Plaintiff claims that, despite her complaints about the fees, the problem was not remedied. Plaintiff also claims that she was eventually removed from the website altogether. Moreover, plaintiff alleges that she has received prank calls from the website, and

---

1. Although plaintiff named JDATE as the defendant in the caption of this case, the proper defendant is Sparks Networks USA, LLC ("Sparks Networks"), the owner and operator of JDate.com, a popular dating website. Sparks Networks has appeared in this action, and filed the motion to dismiss or to transfer that is presently before the Court. The Court, therefore, directs the Clerk of the Court to modify the caption of this case accordingly.

that her personal page on the website has been hacked.

Defendant has moved, pursuant to Federal Rule of Civil Procedure 12(b)(3), to dismiss the action for improper venue or, in the alternative, to transfer the action, pursuant to 28 U.S.C. § 1404(a),[2] to the United States District Court for the Cen-

2. In connection with its transfer motion, defendant cites both 28 U.S.C. § 1404(a) and § 1406(a). Section 1404(a) allows a court to transfer a case, even if the venue is proper, to any other district or division where it might have been brought "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Section 1406(a), on the other hand, permits a district court to transfer a case, "if it be in the interest of justice," when the venue is improper. 28 U.S.C. § 1406(a). Thus, determining whether defendant's transfer motion is more appropriately brought pursuant to Section 1404(a) or 1406(a) depends on whether venue in New York is proper or improper. "The presence of a forum selection clause does not enter into this analysis," *GMAC Commer. Credit v. Dillard Dep't Stores*, 198 F.R.D. 402 (S.D.N.Y.2001); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28 n. 8, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) ("Congress' determination of where venue lies cannot be trumped by private contract and [ ], therefore, a forum selection clause cannot render venue improper in a district if venue is proper in that district under federal law." (citation and quotation marks omitted)), "[r]ather, venue is determined by statute at 28 U.S.C. § 1391," *GMAC Commer. Credit*, 198 F.R.D. at 405. Section 1391 provides that a civil action may be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ...; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

In her complaint, plaintiff alleges that she was improperly billed on a monthly basis, received prank phone calls, and was sexually assaulted on a date. (Compl.) Construing these allegations in the light most favorable to plaintiff, a substantial part of the events that gave rise to plaintiff's claims in this lawsuit occurred in the Eastern District of New York (as plaintiff is a resident of Lawrence, New York, and therefore received the bills, the calls, and went on the date where she was allegedly sexually assaulted in the area). *See, e.g., Reyes v. Reyes*, 11–CV–2536 (KAM)(LB), 2012 WL 4058037, at *5–6, 2012 U.S. Dist. LEXIS 131659, at *17–19 (E.D.N.Y. Sept. 14, 2012) (stating that "venue may be appropriate in a given district even if a greater portion of events occurred elsewhere," and concluding that when all inferences are construed in *pro se* plaintiff's favor, she alleged facts sufficient to show that the district in which she filed bore a "substantial connection" to her litigation (citation and internal quotation marks omitted)); *cf. Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir.2005) (explaining that venue is not restricted to the district in which the "most substantial" events or omissions giving rise to a claim occurred, but that venue can be appropriate in multiple jurisdictions, so long as a "substantial part" of the underlying events took place in those districts). Venue in this District would therefore be proper under Section 1391(b)(2).

Even if a substantial part of the events giving rise to this lawsuit were not deemed to have occurred in this District, venue would be proper under Section 1391(b)(3). Under the venue statute, when the defendant is a corporation, it "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c)(2). Thus, whether or not venue in this District is proper under Section 1391(b)(3) depends on whether defendant was within this Court's personal jurisdiction at the time the action was initiated. Courts in this District have held that websites like JDate.com—interactive websites that have a commercial component—can purposefully avail themselves of jurisdiction in a state when they make sales to customers in that state. *Compare ICG Am., Inc. v. Wine of the Month Club, Inc.*, No. 3:09–cv–133(PCD), 2009 WL 2843261, at *7, 2009 U.S. Dist. LEXIS 77151, at *18–19 (D.Conn. Aug. 28, 2009) ("Defendant purposefully availed itself of the privilege of doing business in Connecticut. Its interactive, commercial website invites consumers from any state, including

tral District of California. For the reasons set forth below, the Court grants defendant's motion to transfer and the action is transferred to the Central District of California.

In particular, the Court finds that the contract at issue contained a presumptively enforceable forum selection clause wherein the parties agreed to litigate any claims arising from defendant's website in the State of California, City of Los Angeles. Although plaintiff alleges in a conclusory fashion that she does not believe that she agreed to such a forum selection clause, the evidence suggests that she, in fact, did. A declaration filed by a Spark Networks employee, screenshots submitted by defendant, and JDate.com's current website all demonstrate that plaintiff could not have signed up to participate on the site without agreeing to its terms and conditions, which included the California forum selection clause. Plaintiff has submitted no evidence to controvert these facts. By affirmatively accepting the terms and conditions of use, plaintiff agreed to be bound by all of the terms contained therein, including the forum selection clause, even if she did not take the time to read through the terms and conditions in their entirety before denoting her acceptance. Moreover, plaintiff does not allege any facts that would make the enforcement of that clause unreasonable or unjust, nor does she allege facts from which this Court could conclude that the clause is invalid. Accordingly, defendant's California forum selection clause is valid and enforceable.

In addition, the other discretionary factors courts consider in determining whether to transfer venue weigh strongly in favor of transfer in this case. For example, the locus of operative facts in this action lies within central California, and central California is the site of many of the documents and witnesses relevant to this case. Moreover, plaintiff has failed to demonstrate that litigating this case in California, as opposed to New York, would be inconvenient, or that she would be financially prejudiced by such a transfer. Because this action could have appropriately been brought in the Central District of California, a balancing of the relevant factors weighs in favor of transfer, and the interests of justice are served by transfer in these circumstances, the Court, in the exercise of its discretion, grants defendant's motion to transfer this case.[3]

Connecticut, to purchase its products." (citation and internal quotation marks omitted)), *and Nat'l Football League v. Miller*, No. 99 Civ. 11846(JSM), 2000 WL 335566, at *2–3, 2000 U.S. Dist. LEXIS 3929, at *6 (S.D.N.Y. Mar. 30, 2000) (noting that mere maintenance of a website visited by people in New York does not confer personal jurisdiction in New York, but finding purposeful availment because website directly profited from plaintiffs in New York), *with Capitol Records, LLC v. VideoEgg, Inc.*, 611 F.Supp.2d 349, 358 (S.D.N.Y.2009) (explaining that a defendant that "neither sells goods or services through its website nor charges membership fees to its registered users" does not conduct traditional business over the Internet for purposes of personal jurisdiction). Thus, because defendant charged membership fees to JDate.com to customers in New York, it can be said to have purposefully availed itself of the privilege of doing business in New York. Accordingly, venue here would be proper under Section 1391(b)(3) if not under Section 1391(b)(2).

Because the Court concludes, without having considered the forum selection clause at issue, that venue would be proper in this District, the Court analyzes defendant's transfer motion under Section 1404(a).

**3.** As discussed in detail *infra*, because the Court, in its discretion, concludes that transfer is the appropriate remedy, the Court elects to transfer the case to the Central District of California pursuant to Section 1404(a), rather than to dismiss the case pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

### A. The Complaint

The complaint alleges that defendant, in connection with its website JDate.com, billed plaintiff repeatedly for months without her consent or knowledge. (Compl.) [4] According to the complaint, plaintiff complained about the improper billing, but no changes were made. (*Id.*) Plaintiff claims that defendant instead "threw [her] off the site." (*Id.*)

Additionally, plaintiff alleges that she has "been receiving prank [and] sexual calls from the website." (*Id.*) Plaintiff claims that she went to the police about those calls, but was told that the names of the callers could not be obtained. (*Id.*) The complaint further alleges that plaintiff was sexually assaulted by a member of the website while they were on a date, and that she has "experienced a lot of hacking" into her personal page on defendant's website. (*Id.*)

### B. Procedural History

Plaintiff filed this lawsuit in New York State Supreme Court, Nassau County, on May 25, 2012. Defendant removed the case to this Court on July 13, 2012. On August 30, 2012, defendant filed a motion to dismiss plaintiff's complaint for improper venue or, in the alternative, to transfer the case to the United States District Court for the Central District of California. By Order dated November 28, 2012, the Court directed plaintiff to respond to defendant's motion to dismiss. Plaintiff subsequently filed a letter in opposition to defendant's motion, dated January 1, 2013. Defendant filed its reply in further support of its motion on January 17, 2013. The Court has fully considered the submissions of the parties.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(3) Motions

■ Enforcement of a forum selection clause is an appropriate basis for a motion to dismiss pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. *See TradeComet.com LLC v. Google, Inc.* ("*TradeComet.com LLC II* "), 647 F.3d 472, 478 (2d Cir.2011). To survive a Rule 12(b)(3) motion to dismiss, the plaintiff has the burden of pleading venue. *See Cold Spring Harbor Lab. v. Ropes & Gray LLP,* 762 F.Supp.2d 543, 551 (E.D.N.Y. 2011). If the court relies only on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of venue. *See Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353, 355 (2d Cir.2005). Thus, if an evidentiary hearing on the question of venue has not been held, "the Court accepts facts alleged in the complaint as true and draws all reasonable inferences in [plaintiff's] favor." *Person v. Google Inc.,* 456 F.Supp.2d 488, 493 (S.D.N.Y.2006) (quoting *Caremark Therapeutic Servs. v. Leavitt,* 405 F.Supp.2d 454, 457 (S.D.N.Y.2005)). The Court is permitted, however, to consider facts outside of the pleadings on a Rule 12(b)(3) motion. *See TradeComet.com LLC v. Google, Inc.* ("*TradeComet.com LLC I* "), 693 F.Supp.2d 370, 375 n. 3 (S.D.N.Y.2010) (explaining that a court, in deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3), "may consider evidentiary matters outside the pleadings, by affidavit or otherwise, regarding the existence of jurisdiction" (citation and internal quotation marks omitted)).

■ If there are disputed facts relevant to the venue determination, it may be ap-

---

4. Because plaintiff's complaint is a single page, the Court refers to the complaint without page numbers.

propriate for the district court to hold an evidentiary hearing, where the plaintiff must demonstrate venue by a preponderance of the evidence, before resolving the Rule 12(b)(3) motion. *See New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir.1997) ("A disputed fact may be resolved in a manner adverse to the plaintiff only after an evidentiary hearing ... no disputed fact should be resolved against [the resisting] party until it has had an opportunity to be heard." (citations omitted)); *see also Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir.2004) ("To resolve such motions when genuine factual issues are raised, it may be appropriate for the district court to hold a Rule 12(b)(3) motion in abeyance until the district court holds an evidentiary hearing on the disputed facts. Whether to hold a hearing on disputed facts and the scope and method of the hearing is within the sound discretion of the district court." (citations omitted)).

■ As set forth in detail below, even assuming that plaintiff's facts are true, and drawing all inferences in plaintiff's favor, the Court concludes that the contract between the parties contains a valid and enforceable forum selection clause in which plaintiff agreed to litigate the claims in the instant lawsuit in the State of California, City of Los Angeles. Because plaintiff has alleged no facts that would provide grounds to invalidate that forum selection clause, discovery and/or an evidentiary hearing on this issue is unnecessary.[5]

---

5. In other cases, this Court has held evidentiary hearings to determine whether a plaintiff assented to a forum selection clause in connection with a website purchase. *See, e.g., Scherillo v. Dun & Bradstreet, Inc.*, 684 F.Supp.2d 313 (E.D.N.Y.2010); *Novak v. Tucows, Inc.*, No. 06–CV–1909 (JFB)(ARL), 2007 WL 922306, 2007 U.S. Dist. LEXIS 21269 (E.D.N.Y. Mar. 26, 2007). The Court also has carefully considered whether an evidentiary hearing is necessary based upon the record before it and concludes that such a hearing is unwarranted under the particular circumstances in this case. As a threshold matter, plaintiff did not request an evidentiary hearing and, thus, any such request is waived. *See, e.g., TradeComet.com LLC*, 435 Fed.Appx. at 33 (holding that plaintiff had forfeited right to any evidentiary hearing on forum selection clause by failing to seek it). Second, in order to trigger an evidentiary hearing, a party must submit evidence creating a genuine issue of disputed fact that requires resolution by the Court. Here, as discussed *infra*, defendant has submitted thorough evidence—including sworn statements and exhibits from the website—demonstrating, *inter alia*, that plaintiff was expressly required to click a specific box to accept the Terms of Service (which included the forum selection clause) in order to utilize the online personals and social introduction services available from JDate.com, and plaintiff was required to acknowledge her acceptance of the Terms of Service each time she submitted credit card information to cover monthly subscription fees for the website. Plaintiff has submitted no evidence, by affidavit or otherwise, to controvert this evidence in any way. Instead, plaintiff's one-page, unsworn opposition letter simply states, in a conclusory fashion, that plaintiff does not remember what was included in the Terms of Service, and speculates (without any evidence) that maybe defendant amended the terms. (*See* Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n") at 1 ("I don't recall the terms of service to have been what I signed up with and it clearly states that they amend them. I don't believe these are the same terms I signed up with. I don't believe that I agreed to any terms stating that I have to sue within California if an issue arises.").) However, defendant has provided a sworn statement from its North American Director of Customer Support that the "Terms of Service were applicable to all subscribers of Spark Networks' website at *JDate.com* and no material changes were made thereto during all four periods where Ms. Zaltz was a subscriber of Spark's website at *JDate.com*" and the forum selection clause at issue was part of those Terms of Service and "remained unchanged during Ms. Zaltz's subscription to *JDate.com*." (Decl. of Steve Burton in Supp. of Def.'s Mot. ("Burton Decl.") ¶ 4.) Plaintiff has submitted no evidence to controvert defendant's evidence on this issue or any other issue, and thus no evidentiary hearing is warranted. *See*

## B. Section 1404(a) Motions

Rather than dismiss an action due to the existence of a valid and enforceable forum selection clause, a court may exercise its discretionary power to transfer the action "[f]or the convenience of parties and witnesses, in the interest of justice ... to any district or division in which it could have been brought," pursuant to 28 U.S.C. § 1404(a). "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir.1992) (citing *Stewart Org., Inc.*, 487 U.S. at 29, 108 S.Ct. 2239). The burden of demonstrating that the action should be transferred to another district lies with the moving party, *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir.2006), and the plaintiff's choice of forum "should not be disturbed unless the balance of factors tips decidedly in favor of a transfer," *Wildwood Imps. v. M/V Zim Shanghai*, No. 04–CV–5538, 2005 WL 425490, at *3, 2005 U.S. Dist. LEXIS 2736, at *9 (S.D.N.Y. Feb. 20, 2005); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (explaining that there generally is "a strong presumption in favor of the plaintiff's choice of forum").

## III. Discussion

### A. Whether Defendant's Forum Selection Clause is Valid and Enforceable

Defendant's argument that venue in the Eastern District of New York is improper is based on the forum selection clause contained within the Terms of Service of its website, JDate.com. That clause provides that all claims arising out of or related to the website will be litigated in the state or federal courts of California, City of Los Angeles. (*See* Def.'s Mem. of Law in Supp. of Mot. to Dismiss or Transfer ("Def.'s Mot.") at 8.) Defendant contends that plaintiff explicitly agreed to be bound by the clause because, like all subscribers to the website, she was "required to formally accept the Terms of Service to become a subscriber" and she had to agree to the Terms of Service each time she renewed her membership. (*Id.* at 5–6.)

*TradeComet.com LLC*, 435 Fed.Appx. at 33 ("We conclude ... that TradeComet failed to raise any material issue of fact as to Google's communication of the terms of the August 2006 agreement that required an evidentiary hearing."); *see also Hancock v. Am. Telephone and Telegraph, Inc.*, 701 F.3d 1248, 1265 (10th Cir.2012) ("Because Plaintiffs failed to raise a genuine factual dispute regarding acceptance of the U-verse terms at the point of installation, the district court did not err in denying an evidentiary hearing."); *Magi XXI, Inc. v. Stato Della Citta Del Vaticano*, 818 F.Supp.2d 597, 610 n. 14 (E.D.N.Y.2011) ("Even taking as true all facts submitted by plaintiff, and viewing all facts in the light most favorable to plaintiff, the Court finds that plaintiff has not carried its heavy burden of rebutting the presumption of enforceability of the forum selection clauses. Thus, it is unnecessary to hold an evidentiary hearing."); *Gamayo v. Match.com LLC*, Nos. C11–00762 SBA, C 11–1076 SBA, C 11–1206 SBA, 2011 WL 3739542, at *7, 2011 U.S. Dist. LEXIS 95914, at *21 (N.D.Cal. Aug. 24, 2011) ("Since there are no factual disputes that bear upon whether the forum selection clause should be enforced, Plaintiff's request for an evidentiary hearing is denied."); *Universal Grading Serv. v. eBay, Inc.*, 08–CV–3557 (CPS), 2009 WL 2029796, at *12 (E.D.N.Y. June 10, 2009) ("Accordingly, because there is no dispute that persons or entities desiring to become eBay users are required to assent to the User Agreement in force at the time, and because plaintiff Callandrello alleges that he became an eBay user, and does not dispute eBay's allegation that he became an eBay user in 2005, when the 2003 User Agreement was in force, I conclude without need for an evidentiary hearing that the forum selection clause contained in the 2003 User Agreement was reasonably communicated to plaintiff Callandrello." (internal citation omitted)).

As discussed in detail below, because the uncontroverted evidence demonstrates that defendant's mandatory forum selection clause was reasonably communicated to plaintiff, and plaintiff has failed to satisfy her burden of showing that enforcement of the clause would be either unreasonable or unjust, the Court finds defendant's clause—requiring claims to be brought in the State of California, City of Los Angeles—to be valid and enforceable.

### 1. Applicable Law

 Under the standard set forth by the Supreme Court in *M/S Bremen v. Zapata Off–Shore Co.*, forum selection clauses are *prima facie* valid and should control questions of venue absent a "strong showing" that enforcement would be "unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching." 407 U.S. 1, 10, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). The Supreme Court has also stated that a forum selection clause can bind the parties even where the agreement in question is a form consumer contract that is not subject to negotiation. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–94, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). Forum selection clause language must, however, be mandatory to be enforced. *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distribs.*, 22 F.3d 51, 52–53 (2d Cir.1994); *Cent. Nat'l–Gottesman, Inc. v. M.V. "GERTRUDE OLDENDORFF,"* 204 F.Supp.2d 675, 678 (S.D.N.Y.2002) ("For a forum selection clause to be deemed mandatory, jurisdiction and venue must be specified with mandatory or exclusive language." (citation omitted)).

 The Second Circuit has developed a framework to determine the validity of forum selection clauses in the context of motions to dismiss. Under this framework, a clause is "presumptively enforceable" if the moving party can demonstrate the following: (1) the clause was reasonably communicated to the party challenging enforcement; (2) the clause is mandatory rather than permissive in nature; and (3) the claims involved are subject to the clause. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir.2007). The burden then shifts to the non-moving party who, to overcome the presumption of enforceability, must make a "sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* at 383–84 (quoting *M/S Bremen*, 407 U.S. at 15, 92 S.Ct. 1907); *see also Carnival Cruise Lines*, 499 U.S. at 591–92, 111 S.Ct. 1522 (finding that plaintiffs failed to satisfy the "heavy burden of proof" required to invalidate clause for "inconvenience"). Whether the resisting party has rebutted the presumption of enforceability is a question of federal law. *See Phillips*, 494 F.3d at 384 ("Despite the presumptive validity of choice of law clauses, our precedent indicates that federal law should be used to determine whether an otherwise mandatory and applicable forum clause is enforceable under ... [the final] step [ ] in our analysis.").

### 2. Analysis

 The forum selection clause contained within defendant's Terms of Service on its website, JDate.com, provides as follows:

> DISPUTE RESOLUTION: This Agreement is governed by the laws of the State of California without regard to its conflict of law provisions. You agree to personal jurisdiction by and exclusive venue in the state and federal courts of the State of California, City of Los Angeles with regard to any and all claims by you arising out of or related to the website. This Agreement shall not be

governed by the United Nations Convention on Contracts for the International Sale of Goods, the application of which is hereby expressly excluded.

(Burton Decl. Ex. A, Terms and Conditions of Service, at 8.) In regard to this clause, plaintiff states the following: (1) "I don't recall the terms of service to have been what I signed up with"; (2) "I don't believe these are the same terms I signed up with"; and (3) "I don't believe that I agreed to any terms stating that I have to sue within California if an issue arises." (Pl.'s Opp'n at 1.) The fact that plaintiff cannot remember the terms that she was presented with when she joined, or that she simply does not believe that she agreed to suit in California, does not negate the uncontroverted and overwhelming evidence demonstrating that plaintiff could not have become a member of JDate.com without first agreeing to the website's Terms of Service, which included the forum selection clause.

In a declaration in support of defendant's motion to dismiss or transfer, Steve Burton, defendant's Director of Customer Support for North America, explained the membership process for subscribers of JDate.com. In order to join JDate.com, a user is required to "click on a specific box to accept the Terms of Service.... There is a check box which the prospective member is required to click on confirming that he or she has read and agreed to the Terms of Service and which features a hyperlink to a webpage displaying the Terms of Service." (Burton Decl. ¶ 5.) Those Terms of Service include the forum selection clause quoted above. (*Id.* Ex. A, at 8.) In addition, a JDate.com member is required to accept the Terms and Conditions of Purchase (which incorporate and specifically reference the Terms of Service) each time he or she submits payment information to cover monthly subscription fees. (*Id.* ¶ 6.)

Notably, plaintiff does not dispute that the process described by Burton was in place both when she joined the website and each time that she renewed her membership. Plaintiff does not even dispute having read or agreed to certain terms of service before signing up for the website or renewing her membership. Instead, plaintiff states in a conclusory fashion that she does not remember agreeing to, nor does she believe that she agreed to, the specific forum selection clause that is currently contained within defendant's Terms of Service. However, screenshots of the sign-up page containing a hyperlink to the website's Terms of Service, which includes the forum selection clause (*see id.* Exs. A, B), and the payment page containing hyperlinks to the website's Terms and Conditions of Purchase and Supplemental Terms and Conditions of Purchase (*see id.* Ex. C), corroborate the process described by Burton. Moreover, Burton stated that he reviewed defendant's subscription records, discerned the periods of time during which plaintiff was a member of the website, and confirmed that no material changes to the website's Terms and Services were made during those periods. (*Id.* ¶ 3.) Thus, it is clear that in order to have obtained a JDate.com account, and in order to have maintained that account through various billing cycles, plaintiff clicked the box confirming that she had both read and agreed to the website's Terms and Conditions of Service (which included the California forum selection clause), even though she does not recall the specific terms at this time. *See, e.g., Fteja v. Facebook, Inc.,* 841 F.Supp.2d 829, 834–35 (S.D.N.Y.2012) (explaining that declarations filed by defendant's employees, screenshots of defendant's website, and defendant's current website indicate that potential members must agree to the website's terms of service, which included a forum selection

clause, in order to join the site, thereby negating the force of plaintiff's argument that he does not remember agreeing to the website's forum selection clause when he joined).

The Court must next consider whether the fact that plaintiff agreed to the Terms of Service indicates that defendant's forum selection clause was reasonably communicated to her. Several courts across the United States have engaged in a developing discussion of what conditions and actions may manifest one's assent to contractual terms over the Internet. Thus, to determine whether defendant's clause was, in fact, reasonably communicated to plaintiff, the Court places this case on the spectrum of such cases.

The Second Circuit has held that "a consumer's clicking on a[ ] button does not communicate assent to contractual terms if the offer did not make clear to the consumer that clicking on the [ ] button would signify assent to those terms." *Specht v. Netscape Commc'ns Corp.,* 306 F.3d 17, 29–30 (2d Cir.2002) (citation omitted). At issue in *Specht* was an arbitration clause contained in license terms on a website that plaintiffs allegedly accepted when they downloaded a plug-in program from the site. The Second Circuit explained that when plaintiffs were prompted to download free software from the site at the click of a button, they could not see a reference to any license terms that they would be accepting by clicking. That is because the sole reference to any license terms was on a screen that the plaintiffs could have only seen if they decided to scroll down before first acting on the invitation to download. *Id.* at 31–32. Noting that "there is no reason to assume that viewers will scroll down to subsequent screens simply because screens are there," the Second Circuit concluded that a "reference to the existence of license terms on a

submerged screen is not sufficient to place consumers on inquiry or constructive notice of those terms," and that the plaintiffs could therefore not be said to have assented to defendant's arbitration clause when they clicked to download the site's plug-in program. *Id.* at 32. However, the Court noted that "contracts arising from Internet use" have been found in situations where there is "much clearer notice than in the present case that a user's act would manifest assent to contract terms." *Id.* at 33 (citing cases).

Since *Specht,* courts have found such "clearer notice" that Internet user actions will amount to contractual assent in cases involving conspicuous browsewrap agreements and in cases involving clickwrap agreements. In a browsewrap agreement, " 'website terms and conditions of use are posted on the website typically as a hyperlink at the bottom of the screen.' " *Fteja,* 841 F.Supp.2d at 836 (quoting *Hines v. Overstock.com, Inc.,* 668 F.Supp.2d 362, 366 (E.D.N.Y.2009)). A browsewrap agreement "usually involves a disclaimer that by visiting the website—something that the user has already done—the user agrees to the Terms of Use not listed on the site itself but available only by clicking a hyperslink." *Id.* at 837. Several courts have enforced browsewrap agreements where the circumstances indicated that website users " 'must have had actual or constructive notice of the site's terms, and have manifested their assent to them,' " *id.* at 836 (quoting *Cvent, Inc. v. Eventbrite, Inc.,* 739 F.Supp.2d 927, 937–38 (E.D.Va. 2010)), *i.e.,* whether the hyperlink to the terms and conditions of use was made apparent to the average user. A clickwrap agreement, by contrast, requires a user to take more affirmative action; the user must click an "I agree" box after being presented with a list of the terms and conditions of use in order to receive access to a particular product. *See Schnabel v.*

*Trilegiant Corp.,* 697 F.3d 110, 130 n. 18 (2d Cir.2012) (explaining the difference between clickwrap and browsewrap agreements). Forum selection clauses contained in clickwrap agreements have been enforced by numerous courts within this Circuit. *See, e.g., Centrifugal Force, Inc. v. Softnet Commc'n, Inc.,* 08 Civ. 5463(CM)(GWG), 2011 WL 744732, at *7, 2011 U.S. Dist. LEXIS 20536, at *19–20 (S.D.N.Y. Mar. 1, 2011); *TradeComet.com LLC I,* 693 F.Supp.2d at 377–78; *Person. v. Google Inc.,* 456 F.Supp.2d 488, 496–97 (S.D.N.Y.2006); *Novak v. Overture Servs., Inc.,* 309 F.Supp.2d 446, 451 (E.D.N.Y. 2004).

In *Fteja v. Facebook,* the Southern District of New York recently contemplated a hybrid of a browsewrap and a clickwrap agreement. 841 F.Supp.2d 829. The court described defendant Facebook's Terms of Use as "somewhat like a browse-up [sic] agreement in that the terms are only visible via a hyperlink, but also somewhat like a clickwrap agreement in that the user must do something else—click 'Sign Up'—to assent to the hyperlinked terms. Yet, unlike some clickwrap agreements, the user can click to assent whether or not the user has been presented with the terms." *Id.* at 838. In determining whether Facebook's Terms of Use had been "reasonably communicated" to plaintiff, given that consumers were required to take further action not only to assent to the terms, but also to view them, the court considered relevant Supreme Court and Second Circuit contract precedent outside of the Internet context. The court cited *Carnival Cruise Lines, Inc. v. Shute,* where the Supreme Court upheld a forum selection clause on the back of a cruise ticket even though the clause became binding at the time of purchase, and the purchasers only received the actual ticket containing the clause later. 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622. The court

also referenced *Effron v. Sun Line Cruises, Inc.,* where the Second Circuit held that the forum selection clause contained on the back of a ticket bound plaintiffs at the moment they accepted their tickets, even though they had merely been referred to that clause, rather than shown it, in promotional materials that they received prior to their purchase. 67 F.3d 7, 11 (2d Cir.1995). Based on these two non-Internet cases and cases where pure browsewrap and pure clickwrap agreements over the Internet were enforced, the court reasoned that "clicking the hyperlinked phrase [on Facebook's website] is the twenty-first century equivalent of turning over the cruise ticket. In both cases, the consumer is prompted to examine terms of sale that are located somewhere else." *Fteja,* 841 F.Supp.2d at 839. Accordingly, the court held that because plaintiff was "informed of the consequences of his assenting click and he was shown, immediately below, where to click to understand those consequences," Facebook's Terms of Use were "reasonably communicated" for purposes of the *Bremen* analysis. *Id.* at 840 (citing cases).

■ The instant case presents circumstances that are quite analogous to those in *Fteja v. Facebook,* and the Court strongly agrees with the *Fteja* court's analysis. Unlike the license terms at issue in *Specht,* defendant's reference to its Terms and Conditions of Service appear on the same screen as the button a prospective user must click in order to move forward in the registration process. (*See* Burton Decl. Ex. B.) Plaintiff did not need to scroll or change screens in order to be advised of the Terms and Conditions; the existence of, and need to accept and consent to, the Terms and Conditions of Service was readily visible. Moreover, whereas Facebook's Terms of Use were referenced *below* the button a prospective

user had to click in order to assent, defendant's reference to its Terms and Conditions of Service appear *above* the button (*id.*), thereby making it even more clear that prospective members of JDate.com are aware that by clicking the button to move forward in the registration process, they manifest their assent to the Terms and Conditions of Service referenced above.

As to the fact that plaintiff had to click on a hyperlink to view the Terms and Conditions of Service (rather than view the terms on the same page where she had to indicate her assent to the terms), the Court agrees with the *Fteja* court's analogizing this situation to cruise tickets— plaintiff was shown precisely where to access the Terms and Conditions of Service before she agreed to them, and should have clicked on them in the same way that one is expected to turn over a ticket to learn of its terms. Moreover, plaintiff was required to take two specific actions to assent to JDate.com's terms: (1) check the box next to the statement "I confirm that I have read and agreed to the Terms and Conditions of Service" (with a hyperlink to the Terms and Conditions of Service over those words), and (2) click the "Accept and Continue" button. (*See id.*) Thus, plaintiff had to essentially "click" to denote her acceptance of the Terms and Conditions, which contained the forum selection clause, *twice.* In such circumstances, "[a] reason-

ably prudent offeree would have noticed the link and reviewed the terms before clicking on the acknowledgement icon[s]." *Fteja,* 841 F.Supp.2d at 841 (quoting *Guadagno v. E\*Trade Bank,* 592 F.Supp.2d 1263 (C.D.Cal.2008)) (alteration in original).[6]

In sum, the Court concludes that plaintiff assented to JDate.com's Terms and Conditions of Service, meaning that the forum selection clause contained therein was, in fact, reasonably communicated to her.

 As to the second and third steps of the *Bremen* analysis, the Court concludes that defendant's forum selection clause is mandatory, and that the claims in this lawsuit are subject to the clause. The choice of forum is mandatory in this instance because specific language regarding venue has been included in the clause, specifying that "*exclusive* venue" for all claims is in the "state and federal courts of the State of California, City of Los Angeles" (Burton Decl. ¶ 4 (emphasis added)). *See, e.g., Salis v. Am. Export Lines,* 331 Fed.Appx. 811, 813 (2d Cir.2009) (summary order) ("Whether a forum selection clause is mandatory depends on its language, and generally courts will not enforce a clause that specifies only jurisdiction in a designated court without any language indicating that the specified jurisdiction is exclusive." (citation omitted)). Additionally, the claims in this suit are

---

**6.** Moreover, the fact that plaintiff had to scroll through the Terms and Conditions of Service after she clicked on the hyperlink in order to get to the provision containing the forum selection clause does not affect the Court's analysis. *See, e.g., Scherillo v. Dun & Bradstreet, Inc.,* 684 F.Supp.2d 313, 322 (E.D.N.Y.2010) (explaining that "[a] person who checks the box agreeing to the terms and conditions of a purchase on an internet site without scrolling down to read all of the terms and conditions is in the same position as a person who turns to the last page of a

paper contract and signs it without reading the terms," and thus concluding that "forum selection clauses are 'reasonably communicated' to a webpage user even where a user simply has to scroll down a page to read the clause" (citing cases)); *Feldman v. Google,* 513 F.Supp.2d 229, 237 (E.D.Pa.2007) ("That the user would have to scroll through the text box of the Agreement to read it in its entirety does not defeat notice because there was sufficient notice of the Agreement itself and clicking 'Yes' constituted assent to all of the terms.").

subject to the clause because the clause governs "any and all claims by [user] arising out of or related to the Websites" (Burton Decl. ¶ 4). *See, e.g., Salis,* 331 Fed.Appx. at 814 (finding that a clause that, by its terms, applied to "[a]ny claim or dispute arising under or in connection with" a particular bill of lading applied to claims at issue in the case, as those claims pertained to the bill).[7]

 Moreover, plaintiff has not met her heavy burden of establishing that the enforcement of defendant's mandatory forum selection clause, which was reasonably communicated to her, would be unreasonable. A clause is unreasonable if: (1) its incorporation into the agreement was the result of fraud or overreaching; (2) the complaining party will be deprived of his day in court due to the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) the clause contravenes a strong public policy of the forum state. *Roby v. Corp. of Lloyd's,* 996 F.2d 1353, 1363 (2d Cir.1993) (citing *M/S Bremen,* 407 U.S. at 10, 15, 18, 92 S.Ct. 1907 and *Carnival Cruise Lines, Inc.,* 499 U.S. at 595–96, 111 S.Ct. 1522). In all of her papers submitted to the Court, plaintiff alleges neither that she will be deprived of her day in court due to the inconvenience of litigating this dispute in California, nor that California law would divest her of a remedy. In fact, in her opposition papers, plaintiff states that she "would prefer this case be heard in N.Y. state," but that, "[i]n the alternative, [sic] the venue should be changed." (Pl.'s Opp'n at 1.)

Similarly, there is no indication or credible evidence that defendant's forum selection clause was the result of fraud or overreaching, or that its enforcement would be against public policy under New York law. To the extent that plaintiff suggests in a conclusory fashion that she does not believe that she agreed to be bound by the forum selection clause, this Court has already found that plaintiff did, in fact, knowingly assent to defendant's Terms and Conditions of Service, which included the forum selection clause. As a result, even if plaintiff failed to read the terms she agreed to, she is nevertheless bound by the forum selection clause. *See Paper Express, Ltd. v. Pfankuch Maschinen GmbH,* 972 F.2d 753, 757 (7th Cir.1992) (enforcing forum-selection clause where plaintiff had not read the clause prior to signing the contract because "it is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them"); *see also Weingrad v. Telepathy, Inc.,* 05 Civ. 2024(MBM), 2005 WL 2990645, at *4, 2005 U.S. Dist. LEXIS 26952, at *11 (S.D.N.Y. Nov. 7, 2005) (stating that a party was "bound by the terms of the forum selection clause even if he did not take the time to read it because 'a signatory to a contact [sic] is presumed to have read, understood and agreed to be bound by all terms, including the forum selection clauses, in the documents he or she signed.'" (quoting *Sun Forest Corp.*

---

7. Nor is the clause's application affected by the fact that some of plaintiff's claims sound in tort, and not contract, because the viability of those claims depend on the contract she entered into with defendant. *See Bluefire Wireless, Inc. v. Cloud9 Comms.,* No. 09 Civ. 7268(HB), 2009 WL 4907060, at *3, 2009 U.S. Dist. LEXIS 119009, at *10 (S.D.N.Y. Dec. 21, 2009) ("[A] forum selection clause will also encompass tort claims if the tort claims ultimately depend on the existence of a contractual relationship between the parties, or if the resolution of the claims relates to interpretation of the contract, or if the tort claims involve the same operative facts as a parallel claim for breach of contract." (citation and internal quotation marks omitted)).

*v. Shvili,* 152 F.Supp.2d 367, 382 (S.D.N.Y. 2001))). Plaintiff has therefore failed to show that the clause is in any way unreasonable.

In sum, because the Court concludes that defendant's forum selection clause was reasonably communicated to plaintiff, is mandatory, governs the claims in this lawsuit, and is not unreasonable, the clause requiring claims to be brought in the State of California, City of Los Angeles is valid and enforceable.

### B. The Effect of Defendant's Forum Selection Clause

The effect of defendant's valid and enforceable forum selection clause on the fate of this case depends on whether the Court treats defendant's motion as one for dismissal or as one for transfer. If the case should be dismissed under Rule 12(b)(3), the presence of a valid and enforceable forum selection clause is determinative. If, however, the case should be transferred under Section 1404(a), defendant's forum selection clause is merely one factor—albeit, a significant one—in the analysis. For the reasons set forth below, the Court, in its discretion, concludes that transfer pursuant to Section 1404(a) is in the interest of justice. Accordingly, defendant's forum selection clause factors significantly into the transfer analysis, but is not determinative on the question of whether the case should, in fact, be transferred.

#### 1. Applicable Law

■ When a plaintiff violates a valid forum selection clause, either dismissal for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure or transfer under Section 1404 is appropriate. "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." *Minnette v. Time Warner,* 997 F.2d 1023, 1026 (2d Cir.1993) (citing *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 789 (D.C.Cir.1983)). The remedy chosen determines how much weight is given to the existence of a valid and enforceable forum selection clause.

■ When a party argues that a case should be dismissed under Rule 12(b)(3) of the Federal Rules of Civil Procedure because venue is improper, a valid forum selection clause is controlling. *See Trade-Comet.com LLC II,* 647 F.3d at 476–77 (explaining that when a forum selection clause permits suit in an alternative federal forum, a court may enforce it under Rule 12(b)(3) and dismiss the case); *Jones v. Weibrecht,* 901 F.2d 17, 19 (2d Cir.1990) (explaining that the *Bremen* standard controls when "a party seeks to have an action dismissed or remanded to state court, rather than transferred, on the basis of a forum selection clause that purports to preclude litigation from a venue other than a specific state court"). Thus, if a party seeks to enforce a valid forum selection clause via a Rule 12(b)(3) motion, a court may dismiss the action. *TradeComet.com LLC II,* 647 F.3d at 478 (citing *Langley v. Prudential Mortg. Capital Co., LLC,* 546 F.3d 365, 371 (6th Cir.2008) (Moore, J., concurring)); *Phillips v. Audio Active, Ltd.,* 494 F.3d 378, 382 (2d Cir.2007) (affirming dismissal of plaintiff's breach of contract claim through a Rule 12(b)(3) motion based on a forum selection clause).

■ Conversely, the presence of a valid forum selection clause is but one aspect of a court's analysis of a Section 1404(a) transfer motion. *See Stewart Org., Inc.,* 487 U.S. at 28–31, 108 S.Ct. 2239 ("The forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration ... nor no consideration ... but rather the consideration for which Congress provided in § 1404(a)."); *Jones,* 901 F.2d at 19 ("[T]he presence of a forum selection clause [is]

but one factor in the district court's consideration of fairness and convenience under section 1404(a)." (citation omitted)); *Longview Equity Fund, L.P. v. iWorld Projects & Sys., Inc.,* No. 05 Civ. 6745(RJS), 2008 WL 833230, at *3, 2008 U.S. Dist. LEXIS 25850, at *8 (S.D.N.Y. Mar. 26, 2008) ("Forum selection clauses are properly considered as an additional factor in a § 1404 analysis."). Thus, although the existence of a valid forum selection clause may be a "significant factor" in a court's determination of whether or not to transfer a case pursuant to Section 1404(a), it is not dispositive; in addition to the presence of a valid forum selection clause, a court contemplating transfer must also consider the other discretionary factors related to convenience and the interests of justice. *See Stewart Org., Inc.,* 487 U.S. at 29, 108 S.Ct. 2239 ("The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus [in deciding a motion to transfer]."); *Red Bull Assocs. v. Best Western Int'l, Inc.,* 862 F.2d 963, 967 (2d Cir.1988) ("The existence of a forum selection clause cannot preclude the district court's inquiry into the public policy ramifications of transfer decisions.").

### 2. Analysis

Because defendant has moved to dismiss this action or, in the alternative, to transfer the case, the effect of defendant's valid and enforceable forum selection clause depends on the remedy the Court elects.

As a preliminary matter, plaintiff, in her opposition papers, expresses a preference for transfer, rather than dismissal, in the event that the Court concludes that California would be a proper venue for this action. (*See* Pl.'s Opp'n at 1.) Although defendant has expressed a preference for dismissal, it has not argued that transfer would be inappropriate. Instead, defendant has moved, in the alternative, for transfer of this action to the Central District of California.

In addition, given how attentive and responsive plaintiff has been in this matter thus far, the Court deems it likely that plaintiff will simply re-file her claims in California if they are dismissed by this Court. Courts have found the "extra expense and delay required if a case is dismissed only to be refiled in another district to justify transfer over dismissal." *See, e.g., AJZN, Inc. v. Yu,* 12–CV–3348–LHK, 2013 WL 97916, at *5, 2013 U.S. Dist. LEXIS 2943, at *14–15 (N.D.Cal. Jan. 7, 2013) (citing cases); *Rodriguez v. PepsiCo Long Term Disability Plan,* 716 F.Supp.2d 855, 862 (N.D.Cal.2010) ("Dismissal would force Plaintiff to incur additional fees and delay by refiling in the Southern District of New York. The Court therefore concludes that justice is best served by transfer, rather than dismissal." (citing cases)). Moreover, it is unclear, from the face of the complaint, whether the statute of limitations for plaintiff's claims has run. In *Minnette v. Time Warner,* the Second Circuit exercised its "statutory and inherent authority to transfer" a timely filed complaint that the district court had dismissed for improper venue, explaining that because the statute of limitations had run, plaintiff would be unable to have her case heard if it was dismissed. 997 F.2d at 1026–27 ("Given that the functional purpose of 28 U.S.C. § 1406(a) is to eliminate impediments to the timely disposition of cases and controversies on their merits, the transfer of this action, when the statute of limitations has run, is in the interest of justice." (internal citation omitted)). *But see, e.g., Li Kin Wah v. Wu Hak Kong,* No. 85 CIV 4454(LBS), 1987 WL 11165, at *4, 1987 U.S. Dist. LEXIS 3877, at *11 (S.D.N.Y.

May 14, 1987) ("Several courts have held that an erroneous but good faith filing in an improper venue will toll the operation of the statute of limitations." (citing *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 429–30, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965))). Transferring this case ensures that plaintiff's timely filed complaint will be addressed, whereas the claims might otherwise be time barred if the case were dismissed. Finally, as discussed in detail *infra*, after conducting the transfer analysis required under Section 1404(a), the Court finds that transferring this case would be in the interest of justice.

For all of these reasons, the Court, in its discretion, concludes that transfer, rather than dismissal, is the appropriate remedy in this instance.[8] As a result, the existence of defendant's valid and enforceable forum selection clause is but one factor in the Court's Section 1404(a) transfer analysis, discussed in detail below.

### C. Transfer Analysis

■■■ To determine whether transferring this case would be in the interest of justice, the Court must conduct a fact-specific inquiry. As discussed *supra*, the forum selection clause is a significant factor in favor of transfer, however, "[t]he existence of a forum selection clause cannot preclude the [Court's] inquiry into the public policy ramifications of the transfer decision[ ]." *Red Bull Assocs.*, 862 F.2d at 967. For the reasons discussed in detail below, having analyzed the various "other factors relevant to whether transfer would promote 'the convenience of parties and witnesses' and 'the interest of justice,'" *Fteja*, 841 F.Supp.2d at 841 (quoting 28

U.S.C. § 1404(a)), the Court concludes that transfer is warranted in this instance.

### 1. Applicable Law

■■■ Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In determining whether to transfer venue, courts examine (1) whether the action could have been brought in the proposed forum, and (2) whether "'the transfer would promote the convenience of parties and witnesses and would be in the interests of justice.'" *Clarendon Nat'l Ins. Co. v. Pascual*, No. 99 Civ. 10840(JGK)(AJP), 2000 WL 270862, at *2, 2000 U.S. Dist. LEXIS 2881, at *6 (S.D.N.Y. Mar. 14, 2000) (quoting *Coker v. Bank of Am.*, 984 F.Supp. 757, 764 (S.D.N.Y.1997)). "A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." *Stewart Org., Inc.*, 487 U.S. at 29, 108 S.Ct. 2239.

■■■ "'Among the factors to be considered in determining whether to grant a motion to transfer venue are, *inter alia*: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.'" *Fteja*, 841 F.Supp.2d at 832 (quoting *N.Y. Marine and Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir.2010)).

8. The Court recognizes that the Second Circuit has warned district courts not to "waste judicial resources by transferring a case that is clearly doomed." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 436 (2d Cir. 2005) (quoting *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir.1999)). However, even if plaintiff's claims might be difficult to sustain, it does not appear that they are "clearly doomed." *See, e.g., Person*, 456 F.Supp.2d at 498.

However, there is no strict formula for the application of these factors, and no single factor is determinative. *See, e.g., Hilti Aktiengesellschaft v. Milwaukee Elec. Tool Corp.*, 04–CV–629 (ARR)(ASC), 2004 WL 1812821, at *3–4, 2004 U.S. Dist. LEXIS 16373, at *12 (E.D.N.Y. July 22, 2004). Instead, the factors should be applied and weighed in the context of the individualized circumstances of the particular case. Moreover, the moving party has "[t]he burden of establishing the need for a change of forum." *Wildwood Imps.*, 2005 WL 425490, at *3, 2005 U.S. Dist. LEXIS 2736, at *8 (citations omitted).

### 2. Analysis

#### a. Whether This Action Could Have Been Brought in the Central District of California

■ As a threshold matter, the Court must determine whether this action could have been brought in the Central District of California. Diversity of citizenship forms the basis for federal jurisdiction in this case. 28 U.S.C. § 1391(a) states that, in diversity cases, venue is proper in:

(1) a judicial district where any defendant resides, if all defendants reside in the same State,

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

(3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Additionally, under Section 1391(c), "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."

Plaintiff does not dispute defendant's assertion that Spark Networks' principal place of business is central California. Therefore, Spark Networks, the only defendant in this case, "resides" in central California, and the Central District of California is a permissible venue under § 1391(a)(1) and (c). *See, e.g., Am. Motorists Ins. Co. v. Roller Bearing Co. of Am., Inc.*, 99 Civ. 9133(AGS), 2001 WL 170658, at *6, 2001 U.S. Dist. LEXIS 1623, at *19 (S.D.N.Y. Feb. 21, 2001) ("This action could have been brought in the District of Connecticut because it is undisputed that [defendant] has its principal place of business in Fairfield, Connecticut. Accordingly, the District of Connecticut would have personal jurisdiction over [defendant] and venue would be proper under § 1391(a)(1) and (c) as to all of [plaintiff's] claims."); *Advance Relocation & Storage, Inc. v. Wheaton Van Lines, Inc.*, CV 99–2491(DRH)(MLO), 2000 WL 33155640, at *3, 2000 U.S. Dist. LEXIS 19571, at *10–11 (E.D.N.Y. Sept. 15, 2000) ("In the instant case, venue in the United States District Court for the Southern District of Indiana is proper under 28 U.S.C. § 1391(a)(1) because the judicial district is one in which defendant, an Indiana corporation with its principal place of business in Indiana, resides, and all defendants (there being only one) reside in the same state, Indiana.").

#### b. Discretionary Factors

Because this action could have been brought in the Central District of California, the Court must next determine whether the action should be transferred there. As discussed *supra*, the Court has "broad discretion" in this determination, and may consider a number of factors relating to convenience and the interests of justice. *See D.H. Blair & Co.*, 462 F.3d at 106 ("District courts have broad discretion in making determinations of convenience un-

der Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis."). As discussed in detail below, the Court concludes that these factors, on balance, weigh in favor of transfer.

### i. The Forum Selection Clause

As discussed in detail *supra*, the Court concludes that defendant's forum selection clause—requiring any and all claims arising out of or related to JDate.com to be brought in the state and federal courts of the State of California, City of Los Angeles—is valid and enforceable. Thus, that the parties agreed that the proper forum for this type of action would be either the state or federal courts of Los Angeles, California is a "significant" factor in the Court's analysis weighing in favor of transfer. *See Stewart Org., Inc.*, 487 U.S. at 22, 28–31, 108 S.Ct. 2239 (explaining that although a valid and enforceable forum selection clause is but one factor in the district court's Section 1404(a) analysis, it is a "significant" one).

### ii. The Locus of Operative Facts

To ascertain the locus of operative facts, courts look to "the site of the events from which the claim arises." *See 800–Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 134 (S.D.N.Y. 1994). Defendant argues that, in this case, "[t]he alleged wrongful acts will undoubtedly focus on the actions, if any, taken by Spark Networks' employees related to Plaintiff's JDate.com account and their alleged wrongful conduct which led to Plaintiff's claimed injuries." (Def.'s Mot. at 11.) Because Spark Networks is headquartered in Los Angeles, California, defendant contends that the locus of operative facts relevant to the alleged wrongful conduct at issue in this case is necessarily based in that area. (*Id.*) The Court agrees.

The individuals who allegedly improperly billed plaintiff, and who plaintiff allegedly spoke with about her issues with the website, work outside of New York.[9] Although plaintiff accessed the site and called the Company from her home in New York, that fact is not especially relevant to defendant's alleged wrongful conduct. Instead, plaintiff's claims will turn largely on what Spark Employees did and what motivated their actions. Those employees are not located in New York, meaning that the individuals from whom depositions will likely need to be taken are not situated in New York and neither are documents related to the actions that they took.

Moreover, with respect to plaintiff's breach of contract claim in particular, the alleged breach occurred outside of New York (in California, by Spark Networks employees who allegedly improperly billed plaintiff). *See Fteja*, 841 F.Supp.2d at 842 (explaining that although discerning where a contract was negotiated or executed and where it was to be performed is difficult in the case of social networking sites on the Internet, a breach alleged against those who maintain such sites must occur where those employees work); *cf. Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F.Supp.2d 735, 745, 2013 WL 788054, at *8 (S.D.N.Y.2013) ("In a contract case, the locus of operative facts is determined by the location where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred." (citation omitted)). Thus, as between New

---

9. Although defendant states that Spark Networks' principal place of business is in Los Angeles, it does not indicate whether all employees work at that location. However, the Court, taking judicial notice of Spark Networks' website, concludes that all employees of the company work outside the State of New York. *See* http://www.spark.net/contact-us-form/ (indicating that Spark Networks offices are located in California, Utah, and Israel).

York and California, California is clearly the locus of operative facts. *See, e.g., Everlast World's Boxing Headquarters Corp.,* 928 F.Supp.2d at 746, 2013 WL 788054, at *9 (explaining that plaintiff's breach of contract "theory turns on business activities among ... defendants that undisputedly occurred in Kansas, not New York," and that the "locus of operative facts" factor, therefore, "emphatically favors the District of Kansas"); *Fteja,* 841 F.Supp.2d at 841–42 (explaining that employees relevant to the claims in the case reside at Facebook's headquarters in Palo Alto, that it can be said that the contract that was allegedly breached was drafted in Palo Alto, and that the alleged breach occurred in Palo Alto); *Abreu v. Family Shipping & Serv.,* 00–CV–0284 (ILG), 2000 WL 516565, at *2, 2000 U.S. Dist. LEXIS 5272, at *5 (E.D.N.Y. Mar. 6, 2000) ("The operative facts occurred in New Jersey.... It appears that the only connections to New York are that it was the place of initial receipt of the [product at issue] and it is the plaintiff's residence.").

### iii. Convenience of Witnesses

 "The convenience of the forum for witnesses is probably considered the single most important factor in the analysis of whether a transfer should be granted." *ACE Am. Ins. Co. v. Bank of the Ozarks,* 11 Civ. 3146(PGG), 2012 WL 3240239, at *11, 2012 U.S. Dist. LEXIS 110891, at *31 (S.D.N.Y. Aug. 6, 2012) (citation and internal quotation marks omitted); *see also Wagner v. N.Y. Marriott Marquis,* 502 F.Supp.2d 312, 315 (N.D.N.Y.2007) ("[T]he convenience of both party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." (internal citation and quotation marks omitted)). This factor would generally favor transfer because the testimony of Spark Networks employees—who

work in central California and who allegedly improperly billed plaintiff and failed to adequately respond to her complaints—will most likely be the key testimony in the case. Moreover, although the Central District of California would invariably be more inconvenient for plaintiff, "the courts of this circuit have emphasized that a forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel." *Fteja,* 841 F.Supp.2d at 843 (quoting *Effron,* 67 F.3d at 10) (alteration and internal quotation marks omitted).

However, the Second Circuit has stated that a party seeking to rely on the "convenience of witnesses" factor "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978) ("When a party seeks the transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover."); *see also Beatie & Osborn LLP v. Patriot Scientific Corp.,* 431 F.Supp.2d 367, 396 (S.D.N.Y.2006) ("A party moving to transfer on the ground that witnesses will be inconvenienced is obliged to name the witnesses who will be appearing and describe their testimony so that the court may measure the inconvenience caused by locating a lawsuit in a particular forum." (internal citations and quotation marks omitted)). Here, defendant has not identified by name or by title any of its potential witnesses, nor has it made a general statement regarding their anticipated testimony. Accordingly, although this factor appears to favor defendant, it is not entitled to substantial weight.

#### iv. Location of Documents

With respect to the location of documents, defendant has stated that documents relevant to plaintiff's claims are located at its Los Angeles headquarters. (Def.'s Mot. at 11.) Although this factor therefore favors transfer, the Court does not view it as particularly significant given that we live in a technological age, where electronic document production has become the norm in litigation. *See, e.g., Nat'l Union Fire Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 12 Civ. 1250(PKC)(RCE), 2012 WL 1829589, at *4, 2012 U.S. Dist. LEXIS 70206, at *11 (S.D.N.Y. May 11, 2012) ("Less important in an era of electronic documents, easy copying and overnight shipping, the location of relevant documents and sources of proof nonetheless weighs in favor of transfer." (alteration, citation, and internal quotation marks omitted)); *Am. S.S. Owners Mut. Prot. And Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F.Supp.2d 474, 484 (S.D.N.Y.2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents."). Moreover, this factor is not entitled to great weight because defendant has not indicated that transporting documents or other physical evidence from California would be particularly burdensome. *See, e.g., Larew v. Larew*, 11 Civ. 5771(BSG)(GWG), 2012 WL 87616, at *5, 2012 U.S. Dist. LEXIS 2891, at * (S.D.N.Y. Jan. 10, 2012) ("[T]he location of documents is entitled to little weight unless the movant makes a detailed showing of the burden it would incur absent transfer." (alteration, citation, and internal quotation marks omitted)).

#### v. Convenience of the Parties

The Court recognizes that "[w]here transfer would merely shift the inconvenience from one party to the other,' the Court should leave plaintiff's choice of venue undisturbed." *Wagner*, 502 F.Supp.2d at 316 (quoting *Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp.*, 976 F.Supp. 174, 182 (W.D.N.Y.1997)). However, where the parties have agreed upon a forum in a forum-selection clause, as the parties have done here, the convenience of the parties factor generally weighs heavily in favor of adjudicating the case in the chosen forum. *See, e.g., Falconwood Fin. Corp. v. Griffin*, 838 F.Supp. 836, 840 (S.D.N.Y.1993) ("In a case where the parties have already agreed to a particular forum, the 'convenience of the parties' weighs heavily in favor of hearing the case in the designated court."); *Richardson Greenshields Secs., Inc. v. Metz*, 566 F.Supp. 131, 134 (S.D.N.Y.1983) ("[T]he forum-selection clause is determinative as to the convenience of the parties."). Moreover, although plaintiff has stated that she would "prefer this case be heard in N.Y. State" (Pl.'s Opp'n at 1), she has failed to articulate any substantial inconvenience by having to litigate this case in the Central District of California, as opposed to in the Eastern District of New York. This factor therefore weighs strongly in favor of transfer.

#### vi. Plaintiff's Choice of Forum

It is well settled that the plaintiff's choice of forum is "given great weight." *D.H. Blair & Co., Inc.*, 462 F.3d at 107 (citation omitted). Thus, "[a] plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." *Royal Ins. Co. of Am. v. United States*, 998 F.Supp. 351, 353 (S.D.N.Y.1998) (citations omitted); *see also Fteja*, 841 F.Supp.2d at 833 ("[B]ecause a court's discretion to transfer an action 'must be exercised at the very outset of the case, when relatively little is known about how the case will develop, courts

have typically accorded substantial weight to the ... plaintiff's choice of forum.' " (quoting *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F.Supp.2d 690, 695 (S.D.N.Y.2009)) (alteration in original)). However, courts have noted that the weight given to this factor is significantly diminished where, as here, the operative facts did not occur in the forum chosen by plaintiff. *See, e.g., Capitol Records, LLC v. VideoEgg, Inc.*, 611 F.Supp.2d 349, 368 (S.D.N.Y.2009) (explaining that the emphasis placed on plaintiff's choice of forum diminishes where the operative facts upon which the litigation is brought bear little connection to the chosen forum); *Wagner*, 502 F.Supp.2d at 317 ("The presumption favoring plaintiff's choice of forum, however, is not so rigidly applied where, as here, the cause of action arose outside of that forum ...." (citation and quotation marks omitted)).

■ Moreover, plaintiff's choice of forum in filing the lawsuit is not entitled to great deference in this case because, as discussed *supra*, there exists a valid and enforceable forum selection clause that reflects an earlier, contractually agreed upon choice of forum by the plaintiff. *See, e.g., Boehringer Ingelheim Vetmedica, Inc. v. Merial, Ltd.*, Civ. No. 3:09CV212 (AWT), 2010 WL 174078, at *15, 2010 U.S. Dist. LEXIS 6819, at *40 (D.Conn. Jan. 14, 2010) ("[A]s to the weight accorded the plaintiff's choice of forum, the court concludes that this factor weighs heavily against transfer because of the presence of a valid and enforceable forum selection clause, which the Supreme Court has described as a 'significant factor' that should figure centrally in the court's analysis." (quoting *Stewart Org., Inc.*, 487 U.S. at 29, 108 S.Ct. 2239)); *Ran–Mar, Inc. v. Wainwright Bank & Trust Co.*, No. 2:08–cv–159, 2008 WL 4559844, at *3, 2008 U.S. Dist. LEXIS 80167, at *8 (D.Vt. Oct. 9, 2008)

("Ordinarily a valid contractual forum selection clause will overcome deference to a plaintiff's choice of forum, because it is 'treated as a manifestation of the parties' preferences as to a convenient forum.' " (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir.1995))); *Strategic Mktg. & Commc'ns, Inc. v. Kmart Corp.*, 41 F.Supp.2d 268, 273 (S.D.N.Y.1998) ("When a § 1404(a) motion involves a forum selection clause and the language of the clause is mandatory, rather than permissive, deference to the plaintiff's choice of forum is inappropriate."). Thus, although plaintiff believes that venue should remain in this District, a number of factors weigh strongly in favor of transfer—namely, the fact that the parties previously chose California as the appropriate forum for cases like this one through a valid and enforceable forum selection clause, and that the locus of operative facts is centered in California.

vii. Relative Means of the Parties

■ "Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *800–Flowers, Inc.*, 860 F.Supp. at 135; *see also AIG Fin. Prods. Corp. v. Public Utility Dist. No. 1 of Snohomish Cnty., Wash.*, 675 F.Supp.2d 354, 372 (S.D.N.Y.2009) ("In determining whether the relative means of the parties weighs in favor of transfer, a court should determine whether a party's financial situation would meaningfully impede its ability to litigate this case in either forum." (citation and internal quotation marks omitted)). However, " 'where proof of such disparity is not adequately provided, or does not exist, this is not a significant factor to be considered.' " *Fteja*, 841 F.Supp.2d at 844 (quoting *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*,

457 F.Supp.2d 474, 478 (S.D.N.Y.2006)); *see also Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F.Supp.2d 325, 331 (E.D.N.Y.2006) ("A party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." (citation and internal quotation marks omitted)).

■■■ Plaintiff in this case is proceeding *pro se,* and there appears to be a financial disparity between the *pro se* plaintiff and her corporate defendant. However, because plaintiff has not provided any "information demonstrating that [she] would be financially prejudiced by having to litigate in California, this factor adds nothing to [the] analysis." *Quan v. Computer Scis. Corp.,* CV 06–3927(CBA)(JO), 2008 WL 89679, at *7, 2008 U.S. Dist. LEXIS 1068, at *21 (E.D.N.Y. Jan. 7, 2008); *see also Fteja,* 841 F.Supp.2d at 844 ("Since the relative economic ability of the parties to proceed with a case has rarely been a dispositive reason to grant or deny a venue change but is instead but one of several factors for the court to consider, it makes little sense to reject transfer on a ground [plaintiff] has not advanced and where the Court has no evidence in a case where essentially all the other factors weigh in favor of transfer." (alteration, internal citation, and internal quotation marks omitted)). Thus, the relative means factor does not tip the scale that, due to all of the other factors mentioned above, strongly weighs in favor of transfer.

\* \* \*

In sum, after carefully considering the parties' submissions and the applicable law, the Court concludes, in its discretion, that the defendant has met its burden of demonstrating that a balancing of the transfer analysis factors, as well as the totality of the circumstances and the interests of justice, warrants transfer of this action to the Central District of California. Plaintiff has not pointed to any evidence or persuasive reason as to why transfer would be improper. Accordingly, the Court grants defendant's motion to transfer the case.

## IV. CONCLUSION

For the foregoing reasons, the Court denies defendant's motion to dismiss this case and grants defendant's motion to transfer the proceedings. The Clerk of the Court is directed to transfer this action to the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1404(a).

SO ORDERED.